[Cite as *Estate of Gardner v. Krans*, 2026-Ohio-2698.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| ESTATE OF LORETTA GARDNER by and through Executrix, Tonia Jones, | : | APPEAL NO. C-250457<br>TRIAL NO. A-2400349 |
| Plaintiff-Appellant, | : | |
| vs. | : | *JUDGMENT ENTRY* |
| EMILY KRANS, APRN-CNP, | : | |
| MERCY HEALTH SPRINGDALE FAMILY MEDICINE, | : | |
| and | : | |
| SEAN MALARKEY, M.D., | : | |
| Defendants, | : | |
| and | : | |
| MARY BEASLEY, M.D., | : | |
| Defendant-Appellee. | : | |


This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

# OHIO FIRST DISTRICT COURT OF APPEALS

**To the clerk:**

**Enter upon the journal of the court on 7/15/2026 per order of the court.**


**By:**_____
       **Judge**

[Cite as *Estate of Gardner v. Krans*, 2026-Ohio-2698.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


ESTATE OF LORETTA GARDNER by and through Executrix, Tonia Jones,

    Plaintiff-Appellant,

    vs.

EMILY KRANS, APRN-CNP,

MERCY HEALTH SPRINGDALE FAMILY MEDICINE,

  and

SEAN MALARKEY, M.D.,

    Defendants,

  and

MARY BEASLEY, M.D.,

    Defendant-Appellee.

APPEAL NO. C-250457
TRIAL NO. A-2400349

*O P I N I O N*

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: July 15, 2026


*Rittgers Rittgers and Nakajima*, *Joseph W. Shea, III,* and *Stuart W. Penrose*, for Plaintiff-Appellant,

*Perez & Morris LLC* and *Elizabeth E. Baer*, for Defendant-Appellee.

**NESTOR, Judge.**

{¶1} Loretta Gardner sued Dr. Mary Beasley, alleging that Dr. Beasley misread an MRI, missing a brain tumor. Dr. Beasley moved for summary judgment arguing that the one-year medical malpractice statute of limitations barred Gardner's claim. The trial court granted the motion. Gardner now appeals. Because we agree that Ohio's tolling statute does not apply to a nonresident, that the 180-day letter was not sent to Dr. Beasley, and that the trial court did not abuse its discretion in denying Civ.R. 56 discovery *after* the motion for summary judgment was filed, we affirm the trial court's judgment.

## I. Factual and Procedural History

{¶2} Gardner underwent an MRI on April 7, 2022, at Mercy Fairfield Hospital ("Mercy Hospital"). Dr. Beasley, a radiologist, read the MRI. Dr. Beasley did not detect any signs of a tumor. On August 6, 2022, Gardner received another MRI at a different hospital. A new doctor read this MRI and found a malignant tumor. On August 29, 2022, Gardner met with her primary care physician to discuss the results and the cancer diagnosis.

{¶3} On August 3, 2023, Gardner mailed a 180-day extension letter to Mercy Hospital pursuant to R.C. 2305.113. Under Ohio law, a "180-day letter" can extend the one-year statute of limitations for a medical claim. Mercy Hospital received the letter on August 10, 2023. Gardner did not send a letter to Dr. Beasley.

{¶4} Dr. Beasley works for the Columbus Radiology Corporation, an Ohio Corporation, and lives in Kentucky. Dr. Beasley is contracted to Mercy Hospital in Cincinnati to read MRIs, which she does remotely. Dr. Beasley works entirely from her Kentucky home.

{¶5} Gardner filed her complaint on January 23, 2024. Gardner sued Dr.

Beasley as well as other medical professionals from Mercy Hospital. Gardner attempted to serve Dr. Beasley with the complaint multiple times at Mercy Hospital, but she was unsuccessful. On July 10, 2024, Gardner served Dr. Beasley at Dr. Beasley's home in Kentucky. Gardner voluntarily dismissed her claims against all defendants except Dr. Beasley on July 16, 2024.

{¶6} Dr. Beasley moved for summary judgment. In her motion for summary judgment, she argued that Gardner was outside of the one-year statute of limitations for medical negligence claims. Dr. Beasley submitted a signed affidavit stating that she was never employed by Mercy Hospital, nor did she maintain her residence, office, business, or professional practice there. Dr. Beasley stated in her affidavit that she is employed by Columbus Radiology Corp. and was contracted out to Mercy Hospital. The last time she was present in Ohio was for her training with Columbus Radiology Corp. in 2020. She also stated in her affidavit that she has lived at her current residence in Kentucky since 2020.

{¶7} Gardner responded to Dr. Beasley's motion for summary judgment. First, Gardner argued that under R.C. 2305.113, Mercy Hospital was Dr. Beasley's place of "professional practice." Second, Gardner argued that she was within the statute of limitations because of Ohio's absent defendant tolling statute found in R.C. 2305.15. Gardner argued Dr. Beasley's absence from Ohio tolled the statute of limitations. Gardner's attorney also submitted an affidavit where he stated an online search told him Dr. Beasley practiced at Mercy Hospital.

{¶8} The trial court denied Dr. Beasley's motion with no explanation. One week later, a new judge was assigned to the case. Dr. Beasley promptly filed a motion to reconsider. In the interlude, Dr. Beasley filed a motion to strike the attorney affidavit, which the court granted. The trial court also granted the motion for

reconsideration since Gardner's opposition relied on unauthenticated evidence, including the attorney affidavit.

{¶9} Gardner requested to depose Dr. Beasley to gain evidence of Dr. Beasley's alleged purposeful concealment outside of Ohio. Gardner asserted that Dr. Beasley hid herself to avoid service of this lawsuit. The court denied this motion for additional discovery. The trial court reasoned that because Gardner had not completed the deposition prior to the previous motion for summary judgment, it would be inappropriate to allow the deposition for the motion for reconsideration.

{¶10} In September of 2024, Gardner passed away. The trial court substituted Gardner's Estate ("Gardner") as the plaintiff and counsel moved to amend the complaint. Counsel sought to add a wrongful death claim. The court granted "plaintiff's motion to amend her complaint for the sole purpose of adding the decedent's estate and executrix as a party."[1]

{¶11} The court ultimately granted Dr. Beasley's motion for summary judgment. The trial court explained that Dr. Beasley never personally received the 180-day letter. Additionally, the trial court found that the tolling statute did not apply to Dr. Beasley as a Kentucky resident, so Gardner exceeded the statute of limitations. Gardner timely appealed bringing three assignments of error.

## II. Analysis

{¶12} In her first assignment of error, Gardner argues that Dr. Beasley's absence from Ohio saves her claim. In her second assignment of error, she argues that the 180-day letter was properly delivered. Both points support her argument that the trial court should not have granted summary judgment based on the one-year statute

---

[1] A wrongful death claim has a two-year statute of limitations. R.C. 2125.02.

6

of limitations. In her last assignment of error, Gardner argues the trial court erred when it denied her request to depose Dr. Beasley.

### A. First Assignment of Error

{¶13} We review a grant of summary judgment de novo. *Al Neyer, LLC v. Westfield Ins. Co.*, 2020-Ohio-5417, ¶ 13 (1st Dist.). Under Civ.R. 56(C), summary judgment is proper where "'(1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.'" *Id.* at ¶ 14, quoting *State ex rel. Duncan v. City of Mentor City Council*, 2005-Ohio-2163, ¶ 9.

{¶14} Under the first assignment of error, we review the trial court's ruling that the tolling statute in R.C. 2305.15 did not pause the statute of limitations while Dr. Beasley was outside of Ohio. Gardner argues we should ignore precedent from the Supreme Court of the United States. The Supreme Court of the United States has held that Ohio's tolling statute is unconstitutional as applied to nonresident defendants. Gardner asks us to hold that the tolling statute is constitutional as applied to Dr. Beasley. R.C. 2305.15(A)(1) states,

> when a cause of action accrues against a person, if the
> person is out of the state, has absconded, or conceals self,
> the period of limitation for the commencement of the
> action . . . does not begin to run until the person comes
> into the state[.]

{¶15} The Supreme Court of the United States was very clear that the out of state provision is "repugnant to the Commerce Clause" when applied against a

nonresident defendant. *Bendix Autolite Corp. v. Midwesco Ents., Inc.*, 486 U.S. 888 (1988), paragraph two of the syllabus. The statute is unconstitutional when it concerns nonresidents because "the Ohio statute imposes a greater burden on out-of-state companies than it does on Ohio companies, subjecting the activities of foreign and domestic corporations to inconsistent regulations." *Id.* at 894, citing *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 87-89 (1987). As a result, it violates the Commerce Clause. *Id.* at 894-895. Specifically, it violates the dormant Commerce Clause. *See Kennedy v. W. Res. Senior Care*, 2024-Ohio-5565, ¶ 9.

{¶16} The Commerce Clause grants Congress the power "'[t]o regulate Commerce . . . among the several States.'" *Id.*, quoting U.S. Const., art. I, § 8, cl. 3. "[T]he clause has been interpreted to contain an implicit limitation on state governments' ability to take actions that would impair interstate commerce." *Id.*, citing *DIRECTV, Inc. v. Levin*, 2010-Ohio-6279, ¶ 17. This limitation on state governments is known as the dormant Commerce Clause. *Id.* The dormant Commerce Clause is meant to protect against "'regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" *Id.*, quoting *Dept. of Revenue v. Davis*, 553 U.S. 328, 337-338 (2008).

{¶17} The Supreme Court addressed R.C. 2305.15 again in 1995 and the outcome was the same as in *Bendix*. *See Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 751 (1995). In *Reynoldsville*, the plaintiff filed suit against an out of state defendant past the statute of limitations by relying on R.C. 2305.15 pre-*Bendix*. *Id.* The trial court dismissed the plaintiff's claims under the holding in *Bendix*. *Id.* The Ohio Supreme Court reinstated her case, stating that *Bendix* "'may not be retroactively applied to bar claims in state courts [that] had accrued prior to the announcement of that decision.'" *Id.* The Supreme Court of the United States reversed the Ohio

Supreme Court and stated that "[t]he Supremacy Clause bars Ohio from applying its tolling statute to pre-*Bendix* torts." *Id.*, paragraph two of the syllabus.

**{¶18}** The Supreme Court of the United States has been clear. A plaintiff cannot use the tolling statute against a nonresident defendant. *Id.* at 751.

**{¶19}** To allow the tolling statute to apply to an out of state defendant would subject that defendant to continuous liability and the statute of limitations would never run. *See Ruble v. Ream*, 2003-Ohio-5969, ¶ 24 (4th Dist.). In *Ruble*, the Fourth District affirmed the trial court's ruling that found in favor of a nonresident defendant. *Id.* at ¶ 1. The *Ruble* plaintiff attempted to use R.C. 2305.15 to extend the time she had to file suit against a defendant who was a resident of Pennsylvania. *Id.* at ¶ 3, 9. The plaintiff argued that the defendant had been absent from the state, so the tolling statute saved her claim. *Id.* at ¶ 9. The Fourth District rejected this argument relying on *Bendix*. *Id.* at ¶ 22.

**{¶20}** Gardner asserts that Dr. Beasley has been absent from Ohio since she read the MRI in 2022. While this is true, it is because Dr. Beasley does not live in Ohio. She is not a resident of Ohio.[2] R.C. 2305.15 is unconstitutional as applied to Dr. Beasley. The tolling statute did not stop the clock for the period Dr. Beasley "was absent" from Ohio.

**{¶21}** Gardner attempts to save her claim by pointing to *Kennedy*, 2024-Ohio-5565. In *Kennedy*, the Ohio Supreme Court stated, "The tolling statute applies with equal force to both residents and nonresidents of Ohio." *Id.* at ¶ 18, citing *Johnson v. Rhodes*, 89 Ohio St.3d 540, 542 (2000). In *Kennedy*, the defendant doctor was a former resident of Ohio. *Id.* at ¶ 5. The doctor lived in Ohio when treating the plaintiff

---

[2] Dr. Beasley Aff. ¶ 5, 6.

but then moved out of state. *Id.* The Ohio Supreme Court allowed that plaintiff to bring her claim because the court determined this scenario did not violate the dormant Commerce Clause. *Id*. at ¶ 1.

**{¶22}** *Kennedy* differs from the instant case. Dr. Beasley was not an Ohio resident when she treated Gardner. Though *Kennedy* says, "The tolling statute applies with equal force to both residents and nonresidents of Ohio[,]" that quote concerns a former resident of Ohio who provided treatment in Ohio and then moved from Ohio. *See id*. at ¶ 18, citing *Johnson* at 542. We cannot view *Kennedy* in a vacuum nor can we extend the rationale to a Kentucky resident who never resided in Ohio.

**{¶23}** Our holding squares with *Bendix, Hyde,* and *Ruble*. In each of those cases, a nonresident of Ohio, who was not a resident of Ohio when the cause accrued, could not be subject to unlimited liability due to the tolling statute. The same is true here.

**{¶24}** We overrule Gardner's first assignment of error.

### B. Second Assignment of Error

**{¶25}** In her second assignment of error, Gardner asserts that Dr. Beasley received the 180-day letter because Mercy Hospital was her "professional place of practice." R.C. 2305.113(B) allows a plaintiff with a medical malpractice claim to extend the one-year statute of limitations by sending a "180-day letter." To do so, the plaintiff must send the letter to either the defendant's residence, professional practice, employer, or address on file with the state medical board. R.C. 2305.113(B).

**{¶26}** Gardner never sent the 180-day letter to Dr. Beasley's home, employer, or the address on file with the state medical board. Gardner argues, alternatively, that Mercy Hospital is Dr. Beasley's place of professional practice. Ohio courts have yet to interpret what a place of professional practice is.

**{¶27}** Dr. Beasley asks this court to look to *Marotto v. Ohio State Univ. Med. Ctr.*, 2014-Ohio-4549 (10th Dist.). In *Marotto*, a doctor had privileges at the hospital in question just as Dr. Beasley had privileges at Mercy Hospital. *Id.* at ¶ 29. The Tenth District held that those privileges did not create an employee/employer relationship between the doctor and the hospital. *Id.* Dr. Beasley argues if her privileges do not create an employment relationship, then Mercy Hospital cannot be her professional place of business.

**{¶28}** Gardner asks us to adopt a "commonsense" approach. Gardner asserts that she sent the letter "to the only one of the four addresses that could be known or discovered since the defendant concealed her whereabouts by refusing . . . to provide [a] residence address to the State Medical Board of Ohio within 30 days of any change."

**{¶29}** However, Gardner served Dr. Beasley at her home in Kentucky on July 10, 2024. Gardner managed to discover that address. Additionally, Gardner states in her brief that Dr. Beasley's address was not up to date with the Ohio Medical Board nor was it complete. The record before us does not establish that such address is not up to date, nor do we know how Gardner determined it was not up to date. But Dr. Beasley had all the address requirements on file with the Ohio Medical Board. Whether it is current or not is irrelevant. Additionally, Dr. Beasley has the same amount of information publicly listed with the Ohio Medical Board as any other doctor. Gardner could have taken the appropriate steps to acquire the full address and send the 180-day letter to that address. Gardner would have satisfied the requirements of R.C. 2305.113 by simply sending the letter to the address on file with the Ohio Medical Board.

**{¶30}** Case law does not provide an answer to what is a place of professional

practice. What is certain though is that Dr. Beasley works for a Columbus employer, Dr. Beasley has never been to Mercy Hospital, and she works remotely from Kentucky. It strains common sense to conclude that Mercy Hospital is Dr. Beasley's place of professional practice.

**{¶31}** Gardner failed to serve Dr. Beasley the 180-day letter at her residence, professional place of practice, employer, or the address on file with the state medical board.[3] Gardner's failed attempt to deliver the 180-day letter did not extend the statute of limitations and therefore the complaint was untimely.

**{¶32}** Accordingly, we overrule Gardner's second assignment of error.

### C. Third Assignment of Error

**{¶33}** Lastly, Gardner argues that the trial court erred when it denied Gardner's request to depose Dr. Beasley. We review a trial court's decision on discovery matters for an abuse of discretion. *State ex rel. Sawyer v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 2006-Ohio-4574, ¶ 9. "'An abuse of discretion connotes an unreasonable, arbitrary, or unconscionable attitude.'" *Id.*, quoting *State ex rel. Stewart v. State Emp. Relations Bd.*, 2006-Ohio-661, ¶ 10.

**{¶34}** "An appellate court will reverse a trial court's decision that extinguishes a party's right to discovery where its decision is improvident and affects the discovering party's substantial rights." *Queen City Cleaning, LLC v. I74 Wired, LLC*, 2024-Ohio-1761, ¶ 14 (1st Dist.), citing *Mauzy v. Kelly Servs.*, 75 Ohio St.3d 578, 592 (1996). In *Queen City Cleaning, LLC*, we held it was not an abuse of discretion for the trial court to deny a Civ.R. 56 discovery request when the requesting party failed to

---

[3] The trial court found that Dr. Beasley did not receive the letter because Mercy Hospital had the letter in its mailroom, but that letter was not physically given to Dr. Beasley. Gardner did not ensure there was actual receipt by Dr. Beasley. The amended version of R.C. 2305.113 does not require actual receipt. *See Francis v. Cleveland Clinic Found.*, 2026-Ohio-829, ¶ 19 (8th Dist.). We reach the same outcome as the trial court but for different reasons.

"support the motion with an affidavit [or] articulate any factual basis in that motion why it could not present sufficient documentary evidence at the summary-judgment hearing." *Id*. at ¶ 15.

{¶35} Here, the trial court did not allow Gardner to depose Dr. Beasley when the motion for reconsideration was pending. The trial court reasoned that Gardner had not attempted to depose Dr. Beasley before the parties filed their original motions. Gardner did not need to depose Dr. Beasley to support Gardner's original opposition. The court did not allow additional briefing, so it decided depositions could wait until after the court ruled on the motion for summary judgment. Gardner argues that the court did not allow her to conduct Civ.R. 56 discovery, but as Dr. Beasley points out, Gardner did not try to conduct discovery the first time around.

{¶36} Gardner argues further that because the trial court struck her attorney's affidavit, she could not support her claim without a deposition. The attorney's affidavit provided unauthenticated screenshots, which Gardner also attached to her opposition to summary judgment. In her response to Gardner's opposition to summary judgment, Dr. Beasley argued that the screenshots in Gardner's opposition brief were inadmissible. That prompted the plaintiff's attorney to submit an affidavit where he attempted to authenticate the screenshots. Dr. Beasley immediately moved to strike the affidavit. Even still, Gardner did not seek to depose Dr. Beasley until after the trial court granted Dr. Beasley's motion for reconsideration. The trial court subsequently struck the attorney's affidavit.

{¶37} After the affidavit was struck, Gardner moved for Civ.R. 56 discovery and stated,

> The Defendant has moved for a reconsideration of her
>
> Civ.R. 56 motion which was denied by the Court.

13

> Virtually no discovery has taken place. There are several factual items needed to be known for the Court to decide the request. There is a question of concealment, the decedent's brain function (she died from brain cancer and became impaired before her death) and other items of discovery to be acquired. Since the underlying question is answered by the discovery of these and other important items of fact, the Plaintiff requests time to conduct the proper discovery[.]

{¶38} Though Gardner asserts "[v]irtually no discovery has taken place," that was not an issue for Gardner when she responded to Dr. Beasley's first motion for summary judgment. Additionally, the issue of concealment is irrelevant because that concerns the tolling statute. Gardner may not use the tolling statute against Dr. Beasley. As for Gardner's brain function, that was never an issue in the motion for summary judgment.

{¶39} Gardner has failed to "support [her] motion with an affidavit [or] articulate any factual basis in that motion why [she] could not present sufficient documentary evidence at the summary-judgment hearing." *See Queen City Cleaning, LLC*, 2024-Ohio-1761, at ¶ 15 (1st Dist.). Gardner failed to present an argument in her Civ.R. 56 request to explain why she could not obtain this evidence before summary judgment. We conclude it was not an abuse of discretion for the court to deny Gardner's request in the context of the motion for reconsideration.

{¶40} We overrule Gardner's third assignment of error.

### III. Conclusion

{¶41} When a remote nonresident physician is practicing medicine outside of

Ohio, that absence from Ohio does not toll the medical malpractice statute of limitations. In this case, the 180-day letter that normally extends the statute of limitations was not sent to any of the locations specified by Ohio law. And, it was not an abuse of discretion for the trial court to decline additional discovery on a motion for reconsideration. Having overruled all assignments of error, we affirm the trial court's judgment.

Judgment affirmed.

**CROUSE, P.J.,** and **BOCK, J.,** concur.